IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JESSICA M. TAYLOR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:05-CV-2397-D |
| VS. | § | |
| | § | |
| RICHARDSON AUTOMOTIVE II, L.P., | § | |
| D/B/A TOYOTA OF RICHARDSON, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), plaintiff sues her former employer for hostile work environment sexual harassment, constructive discharge, and retaliation. Defendant moves for summary judgment. Concluding that a reasonable jury could not find in plaintiff's favor on her hostile work environment or constructive discharge claim, but that plaintiff has established a prima facie case of retaliation, the court grants in part and denies in part defendant's motion.

I

On September 8, 2003 plaintiff Jessica M. Taylor ("Taylor") began working as a cashier in the parts and services department of defendant Richardson Automotive II, L.P. d/b/a Toyota of Richardson ("TOR").[1]   Glen Barnette ("Barnette"), who was the department

_____

[1]The court recounts the evidence in a light favorable to plaintiff as the summary judgment nonmovant and draws all reasonable inferences in her favor. *E.g., U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F. Supp. 2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.) (citing *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir.

manager and Taylor's supervisor, interviewed and hired her.  Taylor alleges that when she was hired, Barnette informed her that she should expect that employees at TOR would attempt to "get into her pants."  P. Br. 3.  Barnette denies making the statement.  Taylor's tenure at TOR was brief: from September 8, 2003 until October 23, 2003.

TOR maintains a policy prohibiting sexual harassment.  In addition to providing periodic harassment training to employees, TOR has adopted a written sexual harassment policy that it provides to all new employees in its employee handbook.  The policy defines TOR's procedure for reporting a complaint and provides employees several alternatives, including talking to their managers, speaking with the General Manager, or using an outside employee hotline where they can remain anonymous.  The policy also prohibits retaliatory conduct and assures employees that immediate and appropriate action will be taken in response to a complaint.  When she began work at TOR, Taylor signed a statement affirming that she had received the employee handbook and that it was her responsibility to read and become familiar with the policies it contained.

In the fall of 2003 TOR instituted a new binding arbitration program.  Sometime before October 23, 2003, TOR distributed to all employees a document entitled "Mutual Agreement to Arbitrate

---

2000)).

Claims" ("Arbitration Agreement"), and it asked them to sign and return it.  Employees who refused to sign the Arbitration Agreement were asked to sign an acknowledgment to demonstrate they were made aware of the program and had received a copy.  TOR maintains that no employees were fired for refusing to sign the Arbitration Agreement.

Taylor alleges that during her employment, she was subjected to the following acts of sexual harassment: oral comments that she was pretty and would make a good mistress; David Ruiz ("Ruiz"), who worked in the finance department, kissed her hand, brushed his hand across her buttocks, touched her breast, pulled her shirt down, and grabbed her hair; and Ruiz exposed himself to her on October 17, 2003.  Taylor reported her allegations to TOR on October 23, 2003.

Taylor alleges that, after she complained of sexual harassment, she was approached by management level employees and informed that she must execute the Arbitration Agreement or she would no longer have a position at TOR.  TOR denies having made this statement.  Taylor asserts that she did not receive the Arbitration Agreement until she first complained about being sexually harassed.  Taylor refused to sign the Arbitration Agreement and instead signed the acknowledgment that she had received it.  Taylor was not terminated for refusing to sign the Arbitration Agreement, but she never returned to work after October 23, 2003.

On learning of Taylor's allegations, TOR undertook an immediate investigation. On the day Taylor made the complaint, Barnette, General Manager Steve Grogean ("Grogean"), and Human Resource Manager Judy Bass ("Bass") met with her to discuss it. TOR contacted Officer Ken MacKenzie ("Officer MacKenzie"), the dealership's security advisor and a police officer with the Richardson Police Department, to conduct the investigation. That same day, Barnette prepared a memorandum assuring Taylor that the investigation would be conducted confidentially and that she would be protected from retaliation. Grogean issued a memorandum to Ruiz directing him not to contact Taylor or discuss the investigation with anyone.

Officer MacKenzie was unable to determine whether the incidents alleged by Taylor had occurred. Despite the inconclusive findings, TOR issued a memorandum to all employees reiterating the company's anti-harassment policy and its expectations regarding appropriate work conduct. TOR also disciplined Ruiz with a written warning and threat of future disciplinary action, including termination, if TOR received additional complaints or if he retaliated against Taylor. TOR also required Ruiz to re-take the harassment training program. TOR sent a memorandum to Taylor regarding her complaint, informing her of the results of the investigation, the responsive actions taken, and TOR's commitment to protecting her from retaliation and future harassment.

After she made her report, Taylor requested and was granted
the rest of the work day off.  Several days later, after Taylor
failed to return to work, Grogean mailed her an October 30, 2003
memorandum inquiring whether and when she would be returning.  TOR
maintains that Grogean expressed TOR's hope that Taylor would
return to work, and reaffirmed the company's desire to discuss with
her in person the outcome of the investigation.  Grogean then
telephoned Taylor at home, informing her that if she did not make
contact by November 6, 2003, TOR would consider her to have
resigned.  On November 4, 2003, Taylor's attorney sent TOR a letter
stating that she would not be returning to work.

Taylor subsequently filed a claim of discrimination with the
Equal Employment Opportunity Commission ("EEOC").  Later, she filed
the instant lawsuit alleging claims under Title VII for hostile
work environment, constructive discharge, and retaliation.  TOR
moves for summary judgment, and Taylor opposes the motion.

II

The court turns first to Taylor's hostile work environment
claim.

A

Title VII makes it "an unlawful employment practice for an
employer . . . to discriminate against any individual with respect
to his compensation, terms, conditions, or privileges of
employment, because of such individual's . . . sex."  42 U.S.C.

- 5 -

§ 2000e-2(a)(1). "A plaintiff may establish a Title VII violation by proving that sex discrimination has created a hostile or abusive working environment." *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 298 (5th Cir. 2001) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)).

> In order to establish a hostile working environment claim, a plaintiff must prove five elements: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action.

*Id.* (internal quotation marks and citations omitted).

                                    B

Without conceding other elements of this claim,[2] TOR maintains that it is entitled to summary judgment based on the fifth element. TOR contends that it did not have actual notice of the alleged sexual harassment before Taylor made her formal complaint; it lacked constructive notice because the alleged harassment was not sufficiently open and obvious so that it should have known about the harassment; Barnette's alleged statement that salesmen would be interested in Taylor and would try to "get into her pants," even if true, is insufficient proof of constructive notice because the statement does not establish that TOR had constructive knowledge of

_____

[2]TOR does not dispute that Taylor, a female, is a member of a protected class.

                                   - 6 -

the specific harassment about which Taylor complains; and because there was an accessible grievance process that Taylor failed to take advantage of, the court should only reluctantly conclude that TOR should have known of the sexual harassment.

TOR next maintains that on learning of Taylor's allegations, it took immediate and appropriate action to investigate and resolve her claims.  It began an investigation as soon as it learned of the complaint; it acted to prevent interference with the investigation, as well as any retaliatory conduct, by assuring Taylor that the investigation was confidential and that TOR would protect her from retaliation; and it took prompt, direct measures to prevent future problems, reprimanded the alleged offenders, and mitigated Taylor's concerns by distributing a memorandum to all TOR employees reminding them of TOR's policies and expectations with regard to sexual harassment, issuing a written disciplinary warning to Ruiz and requiring him to re-take harassment training, and issuing a written follow-up to Taylor regarding her complaint.

Finally, TOR argues that Taylor's failure to take advantage of TOR's prompt, remedial measures negates her claim that it failed to take prompt remedial action.  It maintains that because Taylor did not return to work after she filed her complaint, she did not give TOR a chance to fully resolve it through prompt remedial action.

Taylor seems to argue in response that TOR had notice of her sexual harassment allegations before the October 23, 2003 meeting.

- 7 -

Specifically, in her recitation of the facts, she maintains that she was sexually harassed by TOR employees and that TOR management was informed of the sexual harassment by other employees. Taylor relies on evidence that on the initial date of hire, Bennett informed her that, "I was attractive and that the salesmen would try to get into my pants." P. App. 27. She maintains that when this evidence is considered in the light most favorable to her, as the summary judgment nonmovant, it establishes that TOR was aware that pervasive sexual harassment and a hostile work environment existed at TOR's facility. She next contends—apparently in response to TOR's argument that it took prompt remedial action to correct the harassment—that after making the report of sexual harassment, she was forced to choose between signing the Arbitration Agreement and/or termination. She asserts that regardless of any subsequent remedial action TOR took, she did not continue working at TOR because she had been constructively terminated. Taylor maintains that, although she received the letter from TOR indicating that she was allowed to return to work, she was never informed whether she would still be subjected to the ultimatum of choosing between the Arbitration Agreement and termination. Based on this evidence, Taylor argues that she has raised genuine issues of material fact that would permit a reasonable jury to find that she was sexually harassed and subjected to a hostile work environment.

TOR points in reply to the absence of evidence that it knew about the sexual harassment. Replying to Taylor's argument that TOR's remedial acts were cancelled out by the request that Taylor sign an Arbitration Agreement, TOR argues that an employer's obligation in response to a sexual harassment complaint extends only to remedy the alleged sexual harassment, not to all other concerns. It points out that Taylor has ignored the Fifth Circuit's requirement that an employee act reasonably in response to an employer's remedial actions. TOR argues that courts have found an employee's failure to return to work without giving the employer an opportunity to remedy the situation to be fatal to constructive discharge claims. It posits that Taylor never asked Barnette or Grogean about the Arbitration Agreement; and, by not returning to work, Taylor unreasonably assumed the worst and jumped to a conclusion without a basis grounded in TOR's actions and communications. Finally, TOR contends that an employee's duty to reasonably take advantage of an employer's corrective opportunities includes the obligation to avail herself of the employer's formal policy and reporting procedures regarding sexual harassment. It maintains that because Taylor failed to report her allegations using any of the multiple methods offered by TOR's anti-harassment policy, and then failed to return to work, she cannot prevail on her sexual harassment claim.

C

Because TOR will not have the burden of proof on Taylor's hostile work environment claim, it can meet its summary judgment obligation by pointing the court to the absence of evidence to support Taylor's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once TOR does so, Taylor must then go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is mandatory on Taylor's hostile work environment claim if she fails to meet this burden. *Little*, 37 F.3d at 1076. To overcome TOR's motion for summary judgment on her hostile work environment claim, Taylor must adduce evidence that would permit a reasonable jury to find that TOR knew or should have known of the harassment and failed to take prompt remedial action. *Woods*, 274 F.3d at 298. Taylor's failure to produce proof in support of this essential element renders all other facts immaterial. *See Edgar v. Gen. Elec. Co.*, 2002 WL 318331, at *4 (N.D. Tex. Feb. 27, 2002) (Fitzwater, J.) (citing *Celotex Corp.*, 477 U.S. at 323).

D

"An employer becomes liable for sexual harassment only if it knew or should have known of the harassment and failed to take prompt remedial action." *Contreras v. Waffle House, Inc*., 2002 WL 1477442, at * 8 (N.D. Tex. July 9, 2002) (Solis, J.) (citing *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 451 (5th Cir. 1994)). "An employee can show actual notice by proving that she complained to higher management." *Id.* (citing *Waltman v. Int'l Paper Co.,* 875 F.2d 468, 478 (5th Cir. 1989)). "Or, she can demonstrate constructive notice by 'showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge.'" *Id.* (quoting *Henson v. City of Dundee,* 682 F.2d 897, 905 (11th Cir. 1982)). "If the harassment complained of is so open and pervasive that the employer should have known of it, had it but opened its corporate eyes, it is unreasonable not to have done so, and there is constructive notice." *Sharp v. City of Houston*, 164 F.3d 923, 930 (5th Cir. 1999) (citing *Williamson v. City of Houston, Tex.*, 148 F.3d 462, 465 (5th Cir. 1998); *Waltman*, 875 F.2d at 478)).

For example, in *Waltman* the Fifth Circuit held that there was a fact issue regarding constructive knowledge when the plaintiff testified that there was sexual graffiti directed at her in numerous locations at her place of employment. *Waltman*, 875 F.2d at 477-78. In contrast, in *Colbert v. Georgia-Pacific Corp.*, 995

F. Supp. 697 (N.D. Tex. 1998) (Kendall, J.), this court held that evidence that the employer knew of complaints by one of the plaintiff's coworkers against the plaintiff's alleged harasser was insufficient to establish that the company had constructive notice that the plaintiff was being harassed. *Id.* at 702. It explained that "in the cases that have held employers liable on the basis that the pervasiveness of sexual harassment implies constructive knowledge, the pervasive conduct *is the conduct of which the plaintiff complains*." *Id.* (citing *Pfau v. Reed*, 125 F.3d 927, 939-40 n.10 (5th Cir. 1997), *vacated on other grounds*, 525 U.S. 801 (1998)).

In her factual recitation, Taylor appears to suggest that TOR had notice of her sexual harassment allegations before the October 23, 2003 meeting. Specifically, she states that she was sexually harassed by TOR employees and that TOR management was informed by other employees of the sexual harassment to which Taylor was exposed. To the extent Taylor intends to argue that TOR had actual knowledge of her sexual harassment complaint before it began taking remedial action on October 23, 2003, the court holds that she has not presented sufficient evidence to permit a reasonable jury to find that TOR knew about sexual harassment allegations before that date. The only evidence she cites in support of this allegation is the memorandum TOR sent her on October 23, 2003, which states: "Jessica, as you know, we recently heard, not from you directly,

that you have had some concerns regarding some alleged conduct involving some of your co-workers, from the sales department." P. App. 52.   But both Grogean and Barnette aver in their affidavits that the reason they had not heard directly from Taylor about her complaints was because, on October 22, when Barnette asked her if she had any concerns, Taylor told Barnette to call a friend of hers who did not work at TOR.   When Barnette called the friend on October 23, he learned that Taylor claimed to have been subjected to inappropriate behavior by some of her male coworkers.   Taylor does not point the court to evidence that would permit a finding that TOR had actual knowledge that she had been subjected to sexual harassment before Barnette called Taylor's friend on October 23.

Taylor next adduces evidence that, on her initial hire date, she was informed by Barnette that she should expect that employees at TOR would attempt to "get into her pants." P. Br. 3.   She argues that this statement is evidence that TOR was aware that pervasive sexual harassment and a hostile work environment existed at its facility.   Assuming *arguendo* that Barnette made this statement, it is alone insufficient to permit a reasonable jury to find that TOR had constructive knowledge.

To support a finding of constructive knowledge, the plaintiff must adduce evidence that the harassment was so open and pervasive that knowledge can be imputed to the employer.   *Colbert*, 995 F. Supp. at 702.   This court held in *Colbert* that the plaintiff's

evidence that *other* employees had complained of harassment by the plaintiff's harasser was insufficient to establish that the harassment of the *plaintiff* was so open and pervasive that constructive knowledge could be imputed to the employer. *Id.* As in *Colbert*, Taylor's evidence regarding Barnette's statement that employees would attempt to "get into her pants," would not of itself enable a reasonable jury to find that the sexual harassment of Taylor was so open and pervasive that TOR had had constructive knowledge of it. Because Taylor has adduced no other evidence to support her allegation that the harassment was so open and pervasive that knowledge can be imputed to TOR, the court holds that no reasonable jury could find that TOR had actual or constructive knowledge of other employees' behavior until it was reported on October 23, 2003.[3] *See Contreras*, 2002 WL 1477442, at *8. Accordingly, unless Taylor can adduce evidence that would permit a reasonable jury to find that TOR failed to take prompt remedial action after it learned of her complaint on October 23, TOR is entitled to summary judgment dismissing Taylor's Title VII

---

[3]The court's conclusion is also supported by evidence that before Taylor lodged her complaint, TOR had not received any other complaints or charges of sexual harassment; TOR had never received a complaint about Ruiz's workplace conduct; TOR's investigation of the incident revealed that those who had observed interactions between Taylor and her alleged harassers construed the interactions as consensual flirtation; and when Ruiz allegedly exposed himself to Taylor, he did so behind partially closed doors, where management and other employees could not observe his conduct. Taylor does not dispute any of this evidence.

hostile work environment claim.

E

"When a company, once informed of allegations of sexual harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 329 (5th Cir. 2004) (citing *Nash v. Electrospace Sys., Inc.*, 9 F.3d 401, 402 (5th Cir. 1993)). "'Prompt remedial action' must be 'reasonably calculated' to end the harassment." *Id.* (quoting *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999)).  Whether the employer has taken prompt remedial action depends on the facts of the case: "[n]ot every response by an employer will be sufficient to discharge its legal duty." *Skidmore*, 188 F.3d at 615 (quoting *Waltman*, 875 F.2d at 479). "Rather, the employer may be liable despite having taken remedial steps if the plaintiff can establish that the employer's response was not 'reasonably calculated' to halt the harassment." *Id.* at 615-16 (quoting *Waltman*, 875 F.2d at 479).

The evidence would only permit a reasonable jury to find that, on learning of Taylor's sexual harassment allegation on October 23, TOR immediately began an investigation; that same day, it provided Taylor a memorandum assuring her that the investigation would be handled confidentially and that TOR would protect her from retaliation; TOR provided Ruiz a memorandum warning him not to

contact Taylor or discuss with anyone her allegations against him; two days later, it issued a memorandum to all employees emphasizing the importance of appropriate workplace conduct and the company's policies regarding harassment and the methods of reporting it; the next week, it issued a written disciplinary warning to Ruiz requiring him to retake harassment training; on October 30 TOR issued a written follow-up to Taylor regarding her complaint, assuring her that TOR would prevent further contact between her and Ruiz; TOR sent a memorandum to Taylor asking her to return to work and to meet with management to discuss her complaint; and TOR sent Taylor a second memorandum inquiring about her intentions regarding returning to work and offering to consider the time she missed as excused.  Taylor does not dispute any of this evidence.  Nor does she adduce any proof that would support a finding that TOR did not take prompt remedial action.

      The court concludes that a reasonable jury could only find that TOR's actions in response to Taylor's complaint constituted prompt remedial action.  The jury could only reasonably find that the steps TOR took in investigating Taylor's allegations, including disciplining her alleged harasser, informing Taylor about the status of the investigation, assuring her of confidentiality and protection against retaliation, and reminding other TOR employees of the importance of the anti-harassment policies at TOR, were "reasonably calculated" to end the harassment.  *Hockman*, 407 F.3d

at 329. Accordingly, because a reasonable jury could not find that TOR knew or should have known that Taylor was being sexually harassed and that it failed to take prompt remedial measures, TOR is entitled to summary judgment dismissing Taylor's hostile work environment claim. *See Nash*, 9 F.3d at 404 (holding that management's prompt investigation and transfer of complainant to department away from harasser was sufficient remedial response); *Pfau*, 125 F.3d at 940-41 (5th Cir. 1997) (concluding that management's reminder of sexual harassment policy and admonishment not to engage in sexually harassing conduct was sufficient remedial response); *Colbert*, 995 F. Supp. at 703 (holding that management's suspension of harasser the day after complaint was made, and terminating him following investigation, constituted prompt remedial action).

                              III

    The court now turns to Taylor's constructive discharge claim.

                              A

This court has long recognized that

> [c]onstructive discharge is not, of course, a cause of action separate from . . . other . . . claims. Constructive discharge applies when an employee has resigned her employment under such circumstances that her resignation is treated as a discharge for the purpose of proving a prima facie case of employment discrimination. It is simply a means of establishing that the discharge component is met.

*Gates v. City of Dallas*, 1998 WL 133004, at *4 (N.D. Tex. Mar. 18,

- 17 -

1998) (Fitzwater, J.) (internal quotation marks and some brackets omitted) (quoting *Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 925 (5th Cir. 1982)).  Consistent with the foregoing principle, it is unclear whether Taylor intends to pursue a separate claim for constructive discharge or whether her constructive discharge allegations merely serve to support her retaliation claim and her failure to take advantage of TOR's remedial actions.  In her complaint, Taylor alleges that "Defendant retaliated against Plaintiff and constructively terminated her from employment after complaining about the sexual harassment." Compl. ¶ 8.  But in her response to TOR's summary judgment motion, Taylor states that she has brought a claim for "sexual harassment and hostile work environment and retaliation." P. Br. 1-2.  She does not mention a distinct claim for constructive discharge.  For purposes of this decision, the court need not resolve whether Taylor is attempting to assert a stand-alone constructive discharge claim.  Whether Taylor relies on constructive discharge as an independent action or as a predicate for another claim, the court's analysis is the same.[4]

B

     TOR maintains that this claim must be dismissed because the alleged harassment against Taylor was not so intolerable that a

_____

     [4]For ease of reference, however, the court will refer to it as a "constructive discharge claim."

reasonable person would have felt compelled to resign.  It argues
that Taylor suffered no aggravating factors that would justify her
leaving, because her title, salary, and job responsibilities did
not change.  TOR also contends that TOR's request that Taylor sign
the Arbitration Agreement is not an aggravating factor that would
cause a reasonable person to resign since TOR asked all employees,
not just Taylor, to sign the agreement in the same period.  It
maintains that TOR's actions do not support Taylor's understanding
that she "would not be welcome back to work" if she did not sign
the agreement.  It points to evidence that other TOR employees who
did not sign the agreement were not terminated, and that Taylor's
conduct, under the circumstances, is neither reasonable nor
constitutes constructive discharge.

     To establish constructive discharge, Taylor must prove that
her working conditions were so intolerable that "a reasonable
person would have felt compelled to resign." *Penn. State Police v.
Suders*, 542 U.S. 129, 147 (2004).  The environment must be
"something more" than that present in a harassment or hostile work
environment claim; a plaintiff must show a "'worse case' harassment
scenario, harassment ratcheted up to the breaking point." *Id.* at
147-48.  In her brief, Taylor has adduced no evidence, nor has she
even argued, that the sexual harassment she suffered was so
intolerable as to amount to constructive discharge.  Thus to the
extent Taylor intends to assert a claim for constructive discharge

- 19 -

arising from the sexual harassment she alleges she suffered at TOR, or for sexual harassment resulting in her constructive discharge, the court grants TOR's motion for summary judgment dismissing her claim.   Any constructive discharge claim Taylor intends to bring therefore must arise from her being forced to choose between signing the Arbitration Agreement or being subject to termination.

It is unclear whether Taylor intends to allege constructive discharge based on TOR's forcing her to choose between signing the Arbitration Agreement and losing her position at TOR.   Although Taylor includes the subheading "Constructive Discharge" in her brief, her argument in this section focuses solely on the elements of a retaliation claim.   Taylor seems to allege constructive discharge as a predicate for her argument that TOR's forcing her to choose between signing the Arbitration Agreement and losing her job was an adverse employment action sufficient to support a retaliation claim.   Nowhere in this section does Taylor argue that she is entitled to recover on a constructive discharge claim. Taylor does contend——in response to TOR's allegation that she cannot establish that TOR knew about her harassment and failed to take prompt remedial action[5]——that she "did not continue performing services for said Defendant as a result of the constructive termination and being required to choose between employment or

---

[5]The court has not addressed this argument by TOR because it has concluded that a reasonable jury could only find that TOR took prompt remedial action.

waiving the claim which arose out of the initial complaint of sexual harassment." P. Br. 9. But even if the court construes this statement as supporting a constructive discharge claim, it would still grant dismissal because Taylor has neither adduced evidence nor even argued that a reasonable employee in her position would have felt compelled to resign.

Taylor has not produced sufficient evidence to enable a reasonable jury to find that she was constructively discharged. TOR is therefore entitled to summary judgment.

IV

Finally, the court considers Taylor's retaliation claim.

A

Taylor alleges that after she complained about the sexual harassment, TOR retaliated against her and constructively terminated her employment based on her failure to execute the Arbitration Agreement.[6]

TOR moves for summary judgment, contending—and this bears emphasis at the outset—that Taylor cannot make out a prima facie case of retaliation. TOR maintains that Taylor cannot show that she suffered an adverse employment action based on the

---

[6]The fact that Taylor cannot recover against TOR for sexual harassment does not, of course, prevent her from prevailing on a retaliation claim that is based on her complaint of sexual harassment. *E.g., Davis v. State Univ. of N.Y.*, 802 F.2d 638, 642 (2d Cir. 1986) ("A finding of unlawful retaliation is not dependent on the merits of the underlying discrimination complaint.") (citing cases)).

requirement that all employees——not just she——sign the Arbitration
Agreement.  It contends that because nothing about her job changed
as a result of her sexual harassment complaint, and the request
that all employees sign the Arbitration Agreement did not result in
anyone's termination, a reasonable employee would not have been
dissuaded from making a harassment charge or from returning to
work.

TOR also contends that, even if the Arbitration Agreement did
constitute an adverse employment action, Taylor cannot make a prima
facie showing of a causal nexus between the protected activity and
the adverse employment decision.  It argues that the summary
judgment evidence shows that its introduction of the arbitration
program was unrelated to Taylor's complaint and that it decided to
implement the arbitration program for all employees many weeks
before Taylor lodged her complaint.  TOR thus maintains that
Taylor's complaint could not have been part of TOR's decision to
ask employees, including Taylor, to sign the Arbitration Agreement,
and that even if Taylor had not complained of sexual harassment,
TOR would have asked her to sign the Arbitration Agreement.

Taylor responds that requiring her to execute the Arbitration
Agreement or face termination on the same date she reported the
sexual harassment was an adverse employment action.  She cites
evidence that, after she complained of sexual harassment, TOR
instructed her that she would be terminated unless she signed the

agreement.  Taylor contends that mandating that an employee sign such an agreement or face termination in response to reporting a sexual harassment claim is an ultimate employment decision as it relates to continued employment; none of the letters TOR sent her after she left TOR's employment addressed the requirement that she sign the Arbitration Agreement as a condition of continued employment; TOR never informed her that she could continue her employment or whether her employment was contingent on executing the Arbitration Agreement; she was first presented with the agreement the day she reported the sexual harassment; and that, faced with choosing between termination or acceding to the Arbitration Agreement, she refused to continue her employment because she was retaliated against immediately after reporting the sexual harassment.

B

Under Title VII, an employer may not discriminate against an employee because the employee has "opposed any practice made an unlawful employment practice . . . or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3.  Where, as here, the plaintiff offers no direct evidence that the defendant retaliated against her, the method of proof set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies.  *E.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at

*9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001)).   The plaintiff must first establish a prima facie case of retaliation. To do so, she must demonstrate that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse employment action.   *Id.* (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)).   The burden then shifts back to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken.   *Id.*   At this stage, the defendant's burden is one of production, not of proof.   *Id.*   If the defendant meets its production burden, the plaintiff must adduce evidence that would permit a reasonable trier of fact to find that "her termination . . . would not have occurred 'but for' her protected conduct." *Montemayor*, 276 F.3d at 692.   "At the summary judgment stage, the nonmovant need only point to the existence of a genuine issue of material fact." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002).   "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long*, 88 F.3d at 305 n.4 (citing *McDaniel v. Temple Indep. Sch. Dist.*, 770 F.2d 1340, 1345 (5th Cir. 1985)).

TOR has not articulated a legitimate, nondiscriminatory reason for requiring that Taylor choose between signing the Arbitration

Agreement or being subjected to termination.  Nor has it addressed the third step of the burden-shifting paradigm: that Taylor's termination would not have occurred but for her complaint of sexual harassment.  TOR moves for summary judgment only on the basis that Taylor cannot establish a prima facie case of retaliation.  As the court will explain, the limited scope of TOR's motion is critical to the court's reasoning.

C

TOR first argues that Taylor cannot show that she suffered an adverse employment action.  Taylor contends that she has met this requirement based on evidence that, after she reported being sexually harassed, TOR forced her to choose between signing an Arbitration Agreement and losing her job.  She maintains that being forced to choose between these two options resulted in her constructive discharge and therefore was an adverse employment action.

The Supreme Court recently broadened the definition of "adverse employment action" for purposes of Title VII retaliation claims.  *Wooten v. Fed. Express Corp.*, 2007 WL 63609 at *16 (N.D. Tex. Jan. 9) (Fitzwater, J.), *appeal docketed*, No. 07-10555 (5th Cir. May 18, 2007).  In *Burlington Northern & Santa Fe Railway Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405 (2006), the Court "rejected the approach taken by several circuits, including [the Fifth Circuit], that required plaintiffs to demonstrate an "'ultimate

- 25 -

employment decision' to satisfy the 'adverse employment action' element of a retaliation claim." *Grice v. FMC Techs., Inc.*, 216 Fed. Appx. 401, 407 (5th Cir. Jan. 30, 2007) (per curiam). Instead, the Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co*, 126 S.Ct. at 2415 (quotation marks and citations omitted). The Court further explained that "material adversity" is distinct from "trivial harms": "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Taylor has adduced evidence that would permit a reasonable jury to find that, when she reported her allegations of sexual harassment to TOR, she was told that if she did not sign the Arbitration Agreement, she would not have a job, i.e., that she was required to choose between signing an agreement that waived her right to a jury trial or facing discharge. A reasonable jury could find based on this evidence that being compelled to choose between signing a binding arbitration agreement and termination might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Accordingly, the court holds that Taylor has

raised a genuine fact issue on the second element of her prima facie case: whether she suffered an adverse employment action.

                                    D

TOR also argues that it is entitled to summary judgment because Taylor cannot satisfy the third element of her prima facie case of retaliation: a causal link between the protected activity and the adverse employment action.

As the court has noted above and reemphasizes here, TOR is moving for summary judgment based on Taylor's alleged inability to satisfy the third element of her prima facie case, not the third component of the burden-shifting framework.  In other words, viewed as an outline with three Roman numerals, TOR's argument is found at I(C), not III.  This is critical to the court's analysis of this ground of TOR's motion.  Under the burden-shifting framework for a retaliation claim, after the defendant has articulated a legitimate nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to establish that the conduct protected "was a 'but for' cause of the adverse employment decision." *Walker,* 2005 WL 2278080, at *9 (quoting *Long,* 88 F.3d at 305 n.4).  The plaintiff's burden in establishing "but for" causation "is more onerous than that initially required to present a *prima facie* case." *Wooten,* 2007 WL 63609, at *16 n.27 (quoting *Phillips v. Credit Lyonnais,* 2002 WL 1575412, at *8 (N.D. Tex. July 16, 2002) (Fish, C.J.)).  But because TOR has not articulated a

legitimate, nondiscriminatory reason for the adverse employment action, and its summary judgment motion is addressed to Taylor's prima facie case, not to the ultimate determination of retaliation,[7] the court will limit its inquiry to the question whether the evidence is sufficient to establish a "causal connection" between the adverse employment action and the protected activity. Taylor's burden in establishing the causation element of her prima facie case is decidedly less onerous than will be her ultimate burden of establishing "but for" causation. *Id.*

Taylor has adduced evidence that the adverse employment action took place in the same meeting in which she reported her claim of sexual harassment, and was committed by the same management personnel to whom she had reported the sexual harassment claim. The Fifth Circuit recently "reject[ed] the notion that temporal proximity standing alone can be sufficient proof of but for causation." *Strong v. Univ. HealthCare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (addressing Title VII retaliation claim). Nonetheless, the panel noted that "temporal proximity alone, when very close, can in some instances establish a *prima facie case* of

---

[7]TOR's contention that—regardless of her sexual harassment complaint—Taylor would have been required to sign the Arbitration Agreement or to acknowledge her awareness of the new policy may persuade the jury that her complaint was *not* the "but for" cause of the adverse action. But because TOR has not adduced evidence of a legitimate, nondiscriminatory reason and has not moved for summary judgment as to the third step of the burden-shifting framework, the court need not reach the question of "but for" causation.

retaliation." *Id.*   Thus while Taylor's evidence of temporal proximity would be insufficient alone to establish the third step of the burden-shifting framework, it is enough, given the extremely close proximity between the protected activity and the adverse employment action, to satisfy the causation element of her prima facie case.[8]

Because Taylor has established a prima facie case of retaliation and TOR has not produced evidence of a legitimate, nondiscriminatory reason for its actions, the court denies TOR's motion for summary judgment dismissing Taylor's retaliation claim.

---

[8]TOR has adduced evidence that it distributed the Arbitration Agreement to all employees and asked them to sign it; that employees who refused to sign were asked to sign an acknowledgment that they were made aware of the program and that they had received a copy of the Arbitration Agreement; and that employees were not terminated for refusing to sign.  TOR cites the example of Justin Hauck ("Hauck"), who refused to sign, but was not terminated.  This evidence does not establish that Hauck was forced to choose between signing the agreement or being terminated, as Taylor allegedly was. Moreover, the fact that Hauck was not subjected to an adverse employment action as a result of his refusal to sign the Arbitration Agreement does not necessarily refute Taylor's argument that, as a result of making a sexual harassment complaint, she was subject to the adverse action of being forced to choose between signing the Arbitration Agreement or losing her job.

- 29 -

\*      \*      \*

The court grants in part and denies in part TOR's March 1, 2007 motion for summary judgment.  The court dismisses Taylor's hostile work environment and constructive discharge claims, and it declines to dismiss her retaliation claim.

**SO ORDERED.**

July 6, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

– 30 –